## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

OMAR TYSON,
    *Plaintiff*,

    v.

STATE OF CONNECTICUT
DEPARTMENT OF ENERGY &
ENVIRONMENTAL PROTECTION,
    *Defendant*.

No. 3:21-cv-736 (JAM)

## ORDER RE MOTIONS *IN LIMINE*

Plaintiff Omar Tyson works as a sanitary engineer for the defendant State of Connecticut Department of Energy and Environmental Protection ("DEEP"). He alleges a claim for a racially hostile work environment based on the alleged conduct of a co-worker who Tyson claims subjected him to a years-long campaign of racially-motivated harassment culminating in the tying of a noose in the window near Tyson's workspace in June 2018.

I have previously denied DEEP's motion for summary judgment. *See Tyson v. Dep't of Energy & Env't Prot.*, 2023 WL 6050049 (D. Conn. 2023). Now the case is about to proceed to trial, and this ruling addresses the parties' multiple motions *in limine* with respect to the scope of allowable evidence.

Before I address specific motions, I will briefly review the primary rules of evidence that govern my determinations. Rule 402 of the Federal Rules of Evidence allows for the admission of relevant evidence, and Rule 401 in turn expansively defines evidence to be "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence," and if "the fact is of consequence in determining the action." Fed. R. Evid. 401.

Even if evidence is relevant, it may be inadmissible if there is a danger of unfair prejudice. Rule 403 instructs that "[t]he court may exclude relevant evidence if its probative

value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Beyond Rule 403's general protection against unfair prejudice, Rule 404 protects against improper character evidence. Rule 404(a) instructs that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Similarly, Rule 404(b)(1) instructs that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

For such evidence of other acts ("any other crime, wrong, or act"), the rule goes on to provide that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit follows "an inclusionary approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. McPartland*, 81 F.4th 101, 115 (2d Cir. 2023).[1] "To determine whether a district court properly admitted other act evidence, the reviewing court considers whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *Ibid.*

---

[1] Unless otherwise noted and to avoid unnecessary citational clutter, this ruling omits all internal quotations, brackets, and derivative citations for all quotations from cases.

Even if evidence is relevant and not excluded for reasons of unfair prejudice, the evidence may be inadmissible hearsay. *See* Fed. R. Evid. 802. The term "hearsay" is defined to mean an out-of-court statement that a party offers for the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c). Certain statements—such as statements of a party opponent—are considered "non-hearsay" and outside the scope of the rule that bars hearsay evidence. *See* Fed. R. Evid. 801(d). And there are multiple hearsay exceptions as well. *See* Fed. R. Evid. 803.

### *Tyson's motion* in limine *re prank (Doc. #110)*

Tyson moves to preclude DEEP from introducing evidence and cross-examining him on the basis that he texted his supervisor (Mark Latham) on April 1, 2022 to report that someone had possibly urinated on his desk. He texted his supervisor as follows:

> Mark I do not know what the hell this is.. but there is like some liquid on my desk and carpet area that smell a lot like urine!!
> … I am taking photos and a sample of the liquid for possible DNA testing!!

After another supervisor (Lori Saliby) learned of the text and immediately came to his desk, Tyson announced that it was just an April Fool's joke.[2]

Tyson argues that this evidence should be precluded because it was merely an April Fool's prank and occurred long past the period from 2011 to 2018 when he was allegedly subject to a hostile work environment. DEEP opposes the motion, arguing that the false statement in the text message bears on Tyson's credibility and that, even if the text message was no more than a prank, Tyson's willingness to play this type of prank bears on his claim of ongoing emotional distress from the hostile work environment he allegedly experienced.

---

[2] *See* Def. Ex. 560 (text message); Def. Ex. 561 (Saliby email describing her response).

I agree with DEEP. The evidence is relevant both to Tyson's credibility and to his claim for damages. The heart of Tyson's hostile work environment case centers on his claim—hotly disputed by DEEP—that he was subject to severe workplace intimidation. If Tyson later made a false claim in the midst of this lawsuit about yet a further act of harassment or intimidation (such as someone urinating on his desk), this has arguable bearing on his credibility. Even if his claim was merely a prank, his willingness to engage in workplace fun-and-games has bearing on his claim of the extent of his continuing emotional distress damages. The probative value of this evidence is not substantially outweighed by any danger of unfair prejudice or confusion. Accordingly, I will deny Tyson's motion *in limine* re prank (Doc. #110).

As to the documents that DEEP intends to use in connection with the April Fool's prank, I conclude that the text messages (Def. Ex. 560) are admissible upon the laying of a proper foundation, but absent a further showing from DEEP as to both the non-hearsay basis for the additional documents (Def. Ex. 561-562) and why DEEP's reprimand of Tyson (Def. Ex. 562) is relevant to a fact at issue in this lawsuit, I will preclude these documents.

### Tyson's motion **in limine** *re threats/termination (Doc. #111)*

Tyson moves *in limine* to ensure that he will be permitted to introduce "testimonial and documentary evidence regarding the threat made to Lori Saliby … by John Hirschfeld … in a 2008 session."[3] Although DEEP's written response appears to seek a limitation on the evidence, I understand from DEEP's statements at oral argument that it no longer seeks a limitation on evidence from 2008 concerning a threat to Saliby. Accordingly, I will grant Tyson's motion to the extent he seeks to introduce evidence concerning Hirschfeld's threat to Saliby.

---

[3] Doc. #111 at 1. DEEP has filed a cross-motion to preclude evidence of Hirschfeld's termination. Doc. #115.

Tyson further moves *in limine* to allow evidence about "the circumstances of Hirschfeld's separation from [DEEP] in 2019," in that Hirschfeld was allegedly terminated (1) after he threatened Theresa Munson, a White Caucasian employee of DEEP's human resources department, and (2) after he was found to have numerous unregistered firearms in his apartment in West Hartford.[4] He argues that this evidence is "highly relevant and probative of the manner in which DEEP handled Hirschfeld's threats to other employees, as compared to the lackadaisical way in which it handled Tyson's repeated concerns about threats made by Hirschfeld."[5]

The factual predicate for Tyson's claim as to why Hirschfeld was terminated is not clear. Tyson's motion does not cite any evidence or explain how he intends to prove the reasons for Hirschfeld's termination. Nor are there any documents in the parties' many proposed exhibits that touch on this subject. So I assume that Tyson intends to bring out any evidence for why Hirschfeld was terminated solely from the testimony of one or more witnesses. It appears that at least one of the listed witnesses—Joanne Driver, DEEP's Human Resources Administrator— could competently testify about DEEP's reasons for terminating Hirschfeld's employment. She submitted an affidavit at the summary judgment stage of this case attesting that "Hirschfeld's employment was terminated due to 'serious misconduct with respect to making threatening statements to agency staff members and for personal use of state equipment while on state time.'"[6] But her affidavit and accompanying materials say nothing more about the nature of the threatening conduct or about guns.

---

[4] *Ibid.*
[5] Doc. #111-1 at 3.
[6] Doc. #85-5 at 19 (¶ 95); *see also id.* at 56-57 (Ex. B, official termination letter).

I will deal first with the admission of evidence that Hirschfeld was terminated for engaging in threatening conduct before dealing with the admission of evidence that Hirschfeld possessed multiple guns. DEEP's defense in this case is that it acted reasonably in response to Tyson's complaints. Although DEEP argues that Hirschfeld's threatening conduct that led to his termination was more severe than what Tyson alleged, it appears to me that—depending on how the evidence is presented—a reasonable jury might well conclude that the overall circumstances were comparable and that Hirschfeld's termination should have occurred when Tyson complained, rather than later in response to Hirschfeld's threatening conduct against a White Caucasian employee. That conclusion is enough to warrant the admission of evidence that Hirschfeld was terminated because of his threatening conduct.

The relevancy of this evidence is not negated by the fact that the conduct at issue occurred in 2019, the year *after* the last act of alleged intimidation and harassment by Hirschfeld against Tyson. After-arising events "may well be relevant if they retrospectively shed light on the significance and nature of acts that are within the temporal scope of the complaint." *Coan v. Dunne*, 2019 WL 1976146, at *4 (D. Conn. 2019). And "it is well-established that a defendant's subsequent conduct may be relevant to a jury's consideration of the significance or nature of a defendant's prior conduct." *ARMOUR Cap. Mgmt. LP v. SS&C Techs., Inc.*, 2020 WL 64297, at *3 (D. Conn. 2020) (citing cases). So it is fair game for the jury to consider how DEEP responded to Hirschfeld's *later* threatening conduct when deciding if its response to Hirschfeld's *earlier* threatening conduct against Tyson was reasonable and appropriate.

Nor do I agree with DEEP's argument under Rule 403 that the probative value of the evidence of Hirschfeld's termination for threatening conduct is substantially outweighed by the danger of unfair prejudice to DEEP. Hirschfeld is not a party to this action. To the extent that the

jury has an adverse impression of Hirschfeld, it will not necessarily attribute that to DEEP, especially considering that DEEP terminated Hirschfeld's employment in response to the very evidence it now seeks to preclude.

Similarly, I do not agree with DEEP's argument that the evidence of Hirschfeld's termination is improper character evidence that is barred under Rule 404. The evidence is offered consistent with Rule 404(b)(2) for a permissible purpose of knowledge and intent to rebut DEEP's defense that the measures it took in response to Tyson's complaints were reasonable and appropriate.

In any event, even assuming some risk of unfair prejudice to DEEP if the jury learns of the circumstances of Hirschfeld's termination for engaging in threatening conduct, I will be prepared to issue a limiting instruction. For example, I might instruct the jury on the limited purposes for which this evidence is offered and that the jury may not base any verdict against DEEP on antipathy toward Hirschfeld or any of his misconduct that did not involve Tyson. Indeed, as I have previously noted, courts "should be vigilant to the risk that a plaintiff—by seeking to inject a trial with evidence of wrongful acts against others—may effectively seek to put an employer or supervisors on trial for presiding over a generally toxic or dysfunctional workplace, rather than on trial for acts of illegal discrimination or retaliation that actually come within the scope of Title VII and similar laws." *DeAngelis v. City of Bridgeport*, 2018 WL 429156, at *2 (D. Conn. 2018). If DEEP wishes me to issue a limiting instruction, it may promptly file on the docket any such proposed instruction.

That brings me to Tyson's further effort to introduce evidence that Hirschfeld "was found to have numerous unregistered firearms in his possession at his apartment in West Hartford."[7]

---

[7] Doc. #111 at 1.

My first concern was whether Tyson has any non-hearsay basis for introducing such evidence. At oral argument this afternoon, however, Tyson produced a certified arrest warrant application sworn out by a DEEP police officer attesting that he took part in a search of Hirschfeld's apartment on July 25, 2019 that recovered numerous firearms including an assault rifle, four revolvers, and two pistols.

As to the relevancy of this evidence, Tyson argued in court today that the fact that Hirschfeld possessed multiple firearms in July 2019 makes it more likely that Tyson was correct when he claimed in 2017 that Hirschfeld had a firearm in the cubicle next to him and that he could hear "what I thought sounded like a revolver being spent." *Tyson*, 2023 WL 6050049, at *2.

Tyson's claim that Hirschfeld engaged in intimidation with firearms he brought to work is a significant part of his hostile work environment claim. "Tyson claims that Hirschfeld brought a firearm to DEEP 'no less than a dozen times' and would spin the revolver in the cubicle next to Tyson." *Id.* at 7. Tyson testified at his deposition that "he began hearing the sound of a revolver from Hirschfeld's office after Hirschfeld told Tyson that he was mugged 'by [a] black guy' and asserted that '[i]t's never going to happen to me again.'" *Id.* at 8. "Tyson also testified in his deposition that Hirschfeld carried around a cane which he would hold up and point at Tyson, in a way Tyson took to mimic pointing a gun at him." *Ibid.*

I defer ruling at this time on the admissibility of the arrest warrant application or more generally evidence of Hirschfeld's possession of multiple firearms in his apartment in 2019. The parties may file any supplemental briefing addressing the admissibility of this evidence on or before **February 4, 2024**.

In short, I will grant Tyson's motion *in limine* re threats/termination to allow evidence of Hirschfeld's threat(s) against Lori Saliby in 2008 and to allow evidence of the circumstances of Hirschfeld's threatening conduct that led to his termination in 2019. On the other hand, I will defer consideration of Tyson's request to admit evidence that Hirschfeld possessed multiple firearms in 2019.

### *Tyson's motion* **in limine** *re state police investigation (Doc. #112)*

Tyson moves *in limine* to preclude evidence of the investigation by the Connecticut State Police following his report of finding a noose at his workplace. He acknowledges that the State Police conducted an "admittedly in depth investigation" of the noose complaint and that it "could not substantiate" his report of a noose.[8] According to Tyson, however, the State Police investigation is not relevant because DEEP "will undoubtedly attempt to take credit before the trier of fact for calling the State Police to investigate" and DEEP "should not be permitted to camouflage its ineffectual efforts regarding the report of the noose, with those of the comprehensive measures taken by the State Police."[9] He further argues that the jury may confuse evidence of the State Police investigation with DEEP's own internal investigation of Tyson's report of the noose.

I do not agree. A central issue in this case is the veracity of Tyson's account of finding a noose, and the noose evidence itself is a core part of Tyson's claim that he was subject to a racially hostile work environment. As I understand it, the noose is one of only two hostile acts of Hirschfeld that occurred within the statute of limitations period. *See Tyson*, 2023 WL 6050049, at *5. Any evidence from the State Police investigation that casts doubt on Tyson's claim concerning the noose is highly relevant to DEEP's defense against Tyson's claim.

---

[8] Doc. #112-1 at 1-2.
[9] *Id.* at 2.

Moreover, there is no merit to Tyson's argument that DEEP cannot "take credit" for the investigative efforts of the State Police. To the contrary, in attempting to show that it responded reasonably and appropriately to Tyson's report of a noose, DEEP should be able to show that it treated the complaint very seriously by contacting the State Police and that it was reasonable to stay its own investigation while the State Police investigation was pending. Likewise, to the extent that the State Police did not substantiate Tyson's claim and that DEEP was aware of the scope of investigation and its ultimate conclusion, all this bears on the issue of the reasonableness of DEEP's response and the reasonableness and adequacy of its own later investigation.

Thus, the State Police investigation is highly relevant evidence. And its probative value is not substantially outweighed by any danger of unfair prejudice. There is no reason to suppose that the jury will not be able to keep track of and separate those investigative steps taken by the State Police from those investigative steps later taken by DEEP.

To the extent that Tyson has raised concerns in his motion and at oral argument about prejudice from evidence that he did not preserve the original photograph of the noose and that he was not willing to surrender his cellphone to the State Police for a forensic investigation, this evidence of Tyson's cooperation or non-cooperation with an official investigation is all properly probative with respect to the jury's evaluation of the truthfulness of his claim concerning the noose. Indeed, I have previously ruled that I will instruct the jury that "Tyson had a duty to preserve the photo and the phone but that he failed to do so" and that I will permit the jury "to draw an adverse inference if it concludes that Tyson discarded this evidence with intent to make it unavailable for this litigation." *Tyson v. Dep't of Energy & Env't Prot.*, 2022 WL 16949396, at

*5 (D. Conn. 2022). The probative value is not substantially outweighed by any danger of unfair prejudice.

Tyson may promptly file a proposed limiting instruction if he wishes with respect to the State Police investigation. For example, I would likely be willing to instruct the jury concerning the limited purpose for which the State Police investigation and conclusion has been introduced and to further instruct the jury that the State Police's conclusion that Tyson's report could not be substantiated does not control the jury's own independent determination concerning the truthfulness of Tyson's report of the noose.

Lastly, I raised questions at oral argument today about whether the *entire* State Police investigation report is admissible or whether certain portions such as statements of witnesses other than Tyson are subject to hearsay exclusion. The report includes third-party witness statements from Dawn McKay, Lori Saliby, and John Hirschfeld. As I understand it, the fact that a police report may be admissible under Fed. R. Evid. 803(6) or 803(8) does not license a court to overlook double hearsay and to allow the admission for their truth of statements of third parties that appear within the report. *See Hardy v. Adams*, 654 F. Supp. 3d 159, 172 (N.D.N.Y. 2023); *United States v. Carneglia*, 256 F.R.D. 384, 391 (E.D.N.Y. 2009). If I am correct and unless Tyson wishes to waive any hearsay objection, DEEP is requested to prepare a version of the report that omits or redacts such statements by non-police third-parties that are not properly offered for the truth of the matters they assert. Alternatively, if DEEP believes that such third party statements should be admitted, it should explain how such third-party statements qualify as non-hearsay under Fed. R. Evid. 801(d) or fall within an exception to the hearsay rules under Fed. R. Evid. 803.

In short, evidence of the State Police investigation and its conclusions are relevant and not unfairly prejudicial. Accordingly, I will deny Tyson's motion *in limine* re state police investigation. Provided that DEEP lays an adequate foundation for the police report with its author Trooper Michael Hamel, I will be prepared to admit portions of the report that are not subject to exclusion under the hearsay rules.

### DEEP's motion **in limine** *to preclude evidence as to non-parties and allegations that are not part of this lawsuit (Doc. #114)*

DEEP moves to preclude a range of evidence including (1) with respect to other employees' "difficulty and/or experience" with Hirschfeld, (2) "other employees' complaints of harassment and DEEP's response thereto," (3) Tyson's religion, and (4) "claims concerning Helen Robbins."[10] I will address each of these four requests in turn.

As to the first request (evidence of other employees' difficulty with Hirschfeld), I have already ruled that Tyson may introduce evidence concerning Hirschfeld's threatening conduct toward Saliby in 2008 and the threatening conduct toward Munson that formed the basis for his termination in 2019. It does not appear that Tyson has any more evidence concerning Hirschfeld's misconduct toward any other specific employees.

Instead, Tyson wishes to call two more witnesses—Dawn McKay and Phil Wilde—to offer far more general testimony about Hirschfeld's reputation for adverse treatment of African American employees. In the joint trial memorandum, Tyson identifies Dawn McKay as a union steward and then states without further elaboration that she was "aware of other African Americans who had difficulty in the workplace with Hirschfeld."[11] Tyson also identifies Phil Wilde but does not describe his position and then states without further elaboration that he "was

---

[10] Doc. #114 at 1.
[11] Doc. #113 at 4.

aware that other African Americans had difficulty with Hirschfeld in the workplace."[12] It appears from these sparse descriptions that neither McKay nor Wilde have any first-hand knowledge of the "difficulty" that other African Americans had with Hirschfeld, much less any first-hand knowledge about the nature of this "difficulty" or that this "difficulty" was *because* of race.

Nor does Tyson's briefing expand on the basis for any such testimony by McKay or Wilde. Rather than suggesting that either of them has any first-hand knowledge that Hirschfeld was "difficult" with African American employees because of their race, Tyson argues instead that McKay and Wilde may offer so-called "reputation" testimony: that they may testify "pursuant to FRE 803(21) as it relates to Hirschfeld's reputation in and around DEEP with other employees who also happened to be African American of race and black of color."[13]

I have some doubt that the reputation exception to the hearsay rules opens the door for plaintiffs in discrimination cases to call witnesses to testify about whether one or more of their supervisors or co-workers have reputations for being racists or otherwise discriminatory. If it does, then shouldn't the defendant employer have equal latitude to call rebuttal witnesses to testify that particular supervisors or co-workers do *not* have reputations for being racists or otherwise discriminatory? Soon enough, the trial of employment cases may devolve into battles of the reputation witnesses, focused on what the proverbial rumor mill says about a supervisor's or co-worker's motives and with scant attention to actual evidence of discriminatory motive. In any event, I have entered a supplemental briefing order and for now will defer ruling on Tyson's contention that McKay and Wilde may offer reputation evidence of Hirschfeld's reputation for adversity to African Americans.

---

[12] *Id.* at 5.
[13] Doc. #118 at 2. Rule 803(21) provides an exception to the hearsay rule for certain reputation evidence. It states: "Reputation Concerning Character. A reputation among a person's associates or in the community concerning the person's character."

As to the second request ("other employees' complaints of harassment and DEEP's response thereto"), Tyson disclaims any intention to introduce evidence about specific complaints of other employees. Instead, he states an intention to call Dawn McKay to testify about "her observations and experience as a union steward handling complaints by members of her union, as well as her observations and experience involving DEEP's handling of complaints of harassment by its employees."[14] Without "explor[ing] McKay's handling of union members' complaints," Tyson proposes to offer McKay's "observations and impressions of the way Human Resources at DEEP handled Plaintiff's complaints, compared to other employees she witnessed."[15] According to the joint trial memorandum, McKay would testify about "the indifference exhibited in response to the conspicuous hostility directed at Plaintiff, [by] management/HR [], as compared to other employees whose complaints of harassment she has observed and/or handled."[16] Tyson argues that this testimony would be proper lay opinion on the issue of "whether or not DEEP adequately responded to the complaints made by Tyson regarding Hirschfeld."[17]

Rule 701 of the Federal Rules of Evidence governs the admission of "lay opinion" testimony. It provides that "[i]f a witness is not testifying as an expert, [her] testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

---

[14] Doc. #118 at 3.
[15] *Ibid.*
[16] Doc. #113 at 4.
[17] Doc. #118 at 3.

The proposed testimony of McKay would exceed the limits of proper lay opinion testimony in at least two ways. First, the opinion would not be one based on the direct sensory perception of the witness as required under Rule 701(a). *See United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002) (noting because the perception requirement refers to "first-hand knowledge or observation," a witness could not offer his lay opinion that a "bulge" in the pocket of someone located "five or six houses away" was a gun, because he "clearly lacked sufficient 'first-hand knowledge or observation' to enable him to reach this conclusion"); 29 Charles Alan Wright & Arthur R. Miller, 29 FED. PRAC. & PROC. EVID. § 6254 (2d ed.) (noting how the "personal knowledge" requirement for lay opinion testimony involves "perception through any of the senses" and that "[w]hile most lay opinion will be based on what the witness saw, perceptions derived from taste, touch, smell, or hearing also can be used").

Lay opinion is admissible "because it has the effect of describing something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event." *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013). So "Rule 701 is not to be used as a way to channel testimony that is actually expert testimony under Rule 702 to avoid the disclosure requirements of Rule 26." Instead, "Rule 701 is generally limited to testimony based on sensory perceptions, common knowledge, or things a lay person is qualified to observe." *Adams v. Roberts*, 2019 WL 6715604, at *2 (D. Mont. 2019).

But rather than presenting a conclusion that is based on any sensory perception that jurors could not experience for themselves, McKay's opinion is akin to expert testimony from a labor relations specialist about whether DEEP's response to Tyson's complaints was reasonable or adequate. It could just as well come from a retained outside expert who conducted a retroactive

review of DEEP's personnel files and interviews of employees. The substance of McKay's

opinion does not depend on the fact that she had first-hand sensory knowledge of how DEEP has

responded to a range of employee complaints. This runs afoul of the lay-opinion perception

requirement. *See United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007) (error to admit a

witness's lay opinion that the defendant had knowledge of the crime based only on the witness's

generalized "experience" working with the defendant, because this response was "extremely

vague" and the witness's testimony "failed to show that [his] opinion as to [the defendant's]

knowledge was rationally based on facts he had observed").

Nor would McKay's opinion be helpful to the jury as required by Rule 701(b). In

essence, Tyson proposes to offer McKay's unvarnished opinion on an ultimate issue in this case:

whether DEEP's responses to Tyson's complaints were reasonable and adequate. But her opinion

would be untethered to the facts of any other similar cases. Absent such facts of comparator

cases, there would be no way for the jury to decide if her view was based on apples-to-apples

comparisons of Tyson's case to other cases with respect to the types of alleged intimidation and

harassment. As the Second Circuit has observed, "if such broadly based opinion testimony as to

culpability were admissible under Rule 701, there would be no need for the trial jury to review

personally any evidence at all," because "[t]he opinion witness could merely tell the jury what

result to reach." *United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005).

To be sure, in her capacity as a union steward, McKay could be qualified to talk about

DEEP's practices and procedures for responding to employee complaints. If DEEP failed to

follow particular practices or procedures, then Tyson could point to these lapses as evidence of

an inadequate response. But rather than drawing on McKay's experience in this probative

manner, Tyson seeks to invite her to issue a conclusory opinion about the adequacy of DEEP's response.

Thus, Tyson has not shown that the proposed testimony of McKay is proper lay opinion. Accordingly, I will grant DEEP's motion to preclude evidence as to DEEP's second request concerning evidence of other complainants and DEEP's response to their complaints.

As to the third request (evidence of Tyson's religion), DEEP seeks to preclude the testimony proposed by Tyson about his complaints to Phil Wilde that he had been subject to discrimination because of his Muslim religion.[18] It is true that the complaint in this action alleges that Tyson was subject to discrimination because of his race and color. It does not allege that he was subject to discrimination because of his religion. But in seeking to foreclose Wilde from testifying about Tyson's complaint that he was subject to religious discrimination, DEEP ignores its own documents that it proposes to introduce at trial that reflect Tyson's internal complaints about discrimination against his religion.[19] Therefore, I decline to preclude Tyson from presenting the same evidence through Wilde that DEEP itself intends to present through its own records.

Accordingly, I will deny DEEP's motion as to its third request to preclude evidence that Tyson complained that he was subject to discrimination because of his religion. On the other hand, because the complaint in this case does not allege a claim for religious discrimination, I will grant DEEP's motion to the extent of precluding argument by Tyson that it should return a verdict in his favor on the grounds of religious discrimination.

---

[18] Doc. #113 at 5.
[19] *See* Def. Ex. 507 (email from Tyson complaining that DEEP had inquired into his religion); Def. Ex. 508 (memorandum from Viadella re her asking Tyson if he was Muslim); Def. Ex. 530 (Saliby memorandum recounting Tyson's statement that Hirschfeld's harassment was "racially and religiously motivated").

As to the fourth request ("claims concerning Helen Robbins"), Tyson listed Helen Robbins as a trial witness in the joint trial memorandum.[20] He states that she would testify that "she refused to work" with Tyson "based upon her perception of him as being threatening" and that "she researched the alleged 'criminal record' of Tyson."[21]

But Tyson has advised that he does not intend to call Robbins as a witness because of her geographic distance from Connecticut.[22] Nevertheless, Tyson maintains that the jury "should be permitted to consider evidence of other Caucasian of race, white co-workers who openly expressed to their supervisors their baseless fears about working with the Plaintiff."[23] As best as I can tell (although Tyson has done very little to elaborate or explain in his papers or at oral argument), Tyson wants to ask DEEP employees about what they were told by Robbins and other employees about their fears of working with Tyson.

This argument runs into multiple problems. The first is hearsay: that Tyson wishes to use DEEP employees to introduce out-of-court statements by non-witnesses like Robbins for the truth of the matter asserted (that they feared Tyson).

The next problem is that Tyson makes no showing that his co-workers' fears were based on his race. For example, Tyson claims that Robbins refused to work with him because she perceived him as threatening and had researched his criminal history. Tyson does not further state that Robbins feared working with him because of his race or color.

Yet one more problem is that Tyson acknowledged through counsel at oral argument that he was not aware of the fears of Robbins or any employee during the period of the alleged hostile working environment from 2011 to 2018. Therefore, he cannot show that the fears or reluctance

---

[20] Doc. #113 at 10.
[21] *Ibid.*
[22] *Ibid.*
[23] Doc. #118 at 3.

of co-employees to work with him contributed subjectively or objectively to the hostile working environment he faced, much less that they are attributable to DEEP in the absence of any complaint by him related to these fears or reluctance. *See Tyson*, 2023 WL 6050049 at *6 (discussing elements of a hostile work environment claim).

Nor are these stated fears relevant to the issue of the reasonableness or adequacy of DEEP's response to Tyson's complaints concerning the intimidation and harassment by Hirschfeld. The adequacy of DEEP's response must be measured by reference to the hostile working conditions that Tyson complained about (namely, Hirschfeld's intimidation and harassment), not by reference to issues about which he did not complain and for which there is no evidence that they contributed to or aggravated the alleged hostile working environment.

At oral argument, Tyson suggested that his co-workers' fear of him is relevant to his emotional distress damages. But at the same time, he also admitted he first learned of his co-workers' fears during the course of discovery in this lawsuit. It is an elementary rule that any compensatory damages a jury may award must be *caused* by the defendant's violation of the law for which the jury has found the defendant to be liable.[24] If Tyson cannot show (as noted above) that the fears of his co-workers contributed to or aggravated the hostile work environment that is attributable to DEEP, then he cannot cite these fears as grounds for DEEP to pay him damages. Accordingly, for all the reasons outlined above, I will grant DEEP's motion *in limine* with respect to its fourth request.

---

[24] Tyson's proposed jury instructions acknowledge this limitation by proposing that the jury be instructed that "compensatory damages are intended to compensate for the actual losses the Plaintiff suffered *due to the Defendant's unlawful conduct*" and that the jury should "reasonably compensate him for the loss and injuries, either emotional or physical, he suffered *as a result of the defendant's unlawful conduct*." Doc. #113-3 at 11 (emphases added).

In short, I will defer ruling on DEEP's first request pending supplemental briefing concerning the scope of permissible reputation evidence. I will otherwise grant DEEP's motion to preclude as to the second request, grant in part and deny in part DEEP's motion as to the third request, and grant DEEP's motion as to the fourth request.

### DEEP's motion in limine *to preclude evidence of events concerning John Hirschfeld's employment that occurred subsequent to the claims asserted in this case (Doc. #115)*

DEEP moves to preclude evidence concerning the circumstances of DEEP's termination of Hirschfeld's employment in 2019. For the same reasons I have outlined above with respect to Tyson's overlapping motion seeking to allow evidence of the circumstances of Hirschfeld's termination for threatening and his possession of firearms, I will deny the motion as to the circumstances of his termination for threatening and defer the motion as to the allowance of evidence of his firearms.

### DEEP's motion in limine *to preclude expert testimony of treating therapist and extraneous documentation (Doc. #116)*

DEEP moves to preclude expert testimony evidence from Tyson's treating therapist, Marcia Brubek, and any extraneous documents. Based on Tyson's representation that Brubek will not offer expert testimony beyond her treatment of Tyson and his identification of the documents he will use, I will deny DEEP's motion *in limine* as moot.

### CONCLUSION

For the reasons stated above, the Court GRANTS in part, DENIES in part, and DEFERS in part the motions *in limine* as set forth in this ruling.

It is so ordered.

Dated at New Haven this 1st day of February 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge