## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OMAR TYSON, | : | CIVIL NO. 3:21CV00736(JAM) |
| *Plaintiff* | : | |
| v. | : | |
| STATE OF CONNECTICUT DEPARTMENT OF | : | |
| ENERGY & ENVIRONMENTAL PROTECTION, | : | |
| AND COMMISSIONER, KATIE SCHARF | : | |
| DYKES, IN HER OFFICIAL CAPACITY[1] | : | |
| *Defendants* | : | February 8, 2024 |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION FOR SPOLIATION SANCTIONS

The Defendant, Department of Energy and Environmental Protection ("DEEP"), now renews its motion for spoliation sanctions due to the Plaintiff's destruction of the original evidence of the noose Plaintiff alleges he viewed in a common area within the Defendant's office building, and also due to Plaintiff's failure to retain the device on which the original photograph was taken. Plaintiff's destruction of the former and failure to retain the latter has severely prejudiced the Defendant by preventing the Defendant from the opportunity to obtain and review evidence that may refute the Plaintiff's claims for which there are no witnesses or other corroborating evidence. The only way to restore the party harmed by the loss of this evidence is to dismiss the claim that Plaintiff encountered a noose in his workplace.

The Defendant therefore seeks an order dismissing the Plaintiff's claim that he was subjected to a hostile work environment on the basis of having encountered a noose in his workplace.  In the alternative the Defendant seeks a **mandatory** adverse inference order be given as part of the jury instructions in this matter.   The **permissive** adverse inference that is presently

---

[1] All claims against Defendant Dykes were dismissed per this Court's January 14, 2022 Order granting in part and denying in part Defendants' Motion to Dismiss (Doc. #47).

in place was based on the evidence in the record as it existed at the spoliation hearing, but that evidence has now been significantly enhanced and supports a *mandatory* adverse inference.

## I.   <u>BACKGROUND</u>

On September 27, 2022, the Defendant filed its motion for spoliation sanctions (Doc. #68). On October 21, 2022 the Court held an evidentiary hearing on the Defendant's motion for spoliation sanctions. (Doc. #77, 81).   Following the October 21, 2022 evidentiary hearing, the Court issued an order granting in part and denying in part the Defendant's motion for spoliation sanctions. (Doc. #80).   The Court specifically ordered that "The Court GRANTS the motion to the extent that it will instruct the jury that Tyson had a duty to preserve the photo and the phone but that he failed to do so and to allow the jury to draw an adverse inference if it concludes that Tyson discarded this evidence with intent to make it unavailable for this litigation. The Court DENIES the motion to the extent that DEEP seeks dismissal, preclusion of evidence, or a mandatory adverse inference instruction." (Doc.#80, pp.9-10).   In its order, the Court explained "DEEP did not conclusively prove to my satisfaction at the evidentiary hearing that Tyson destroyed the evidence in order to secure an advantage for himself in this litigation…But this is not to say that I necessarily agree with Tyson's claim that he had innocent reasons for what he did. It is only to say that the evidence *on the limited record before me* was not conclusive." (Doc.#80, p.9, emphasis added).

The record at trial is not similarly limited.   The evidence now in the record is significantly expanded from the evidence available to the Court at the spoliation hearing.   Based on the evidence that has been admitted to date, the Defendant believes that the record now supports a conclusion that "Tyson destroyed the evidence in order to secure an advantage for himself in this litigation," and respectfully requests that the Court grant the Defendant the remedy of either dismissing the

claim that Plaintiff located a noose on June 20, 2018, or in the alterative, giving a ***mandatory*** adverse inference instruction, rather than a ***permissive*** adverse inference instruction, to the jury.

## II.   <u>LEGAL STANDARD</u>

Federal Rule 37(e) also provides that "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). The purpose of sanctioning spoliation is "that spoliators should not benefit from their wrongdoing." *Id.*

"Although a district court has broad discretion in crafting a proper sanction for spoliation, we have explained that the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine. The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore "the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id*.

"The party seeking discovery sanctions on the basis of spoliation must show by a preponderance of the evidence: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Klipsch Group, Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018) (quoting *Chin v. Port Auth. of N.Y. & N.J*, 685 F.3d 135, 162 (2d Cir. 2012).

Evidence of "a culpable state of mind" can be shown with circumstantial evidence, including the timing of the deletion. *In re Gorsoan Ltd.*, the court encountered a similar issue in which a party disposed of electronic evidence necessary to the litigation. Docket No. 17-cv-5912 (RJS), 2020 U.S. Dist. LEXIS 104025, at *26 (S.D.N.Y. June 15, 2020). The party seeking discovery moved for spoliation sanctions and the court analyzed that issue. *Id.*

Of particular relevance to the issue in this case is the evidence of a "culpable state of mind" as addressed in the *Gorsoan* case. On that issue, the *In re Gorsoan Ltd.* Court explained that "To start, the timing of the laptop's destruction could hardly be more damning. Bullock destroyed her laptop in December 2017 (Feb. Dep. Tr. at 25:20-27:12), just weeks *before* she was deposed in February 2018 and only weeks *after* she had refused to appear at her originally scheduled deposition in November 2017. This fortuitous timing suggests that once she realized there was no way to avoid her testimonial obligations, Bullock intentionally destroyed her laptop to avoid answering questions about its contents." *Id.* at *26. The court then cited to other cases that held that "bad faith" can be demonstrated by the timing of the destruction of evidence. The court cited to *Malibu Media, LLC v. Tashiro*, No. 13-cv-205 (WTL) (MJD), 2015 U.S. Dist. LEXIS 64281, 2015 WL 2371597, at *16 (S.D. Ind. May 18, 2015), *adopted by* 2015 U.S. Dist. LEXIS 75588,

2015 WL 3649359 (S.D. Ind. June 11, 2015) for the holding that "[T]he timing of the destruction of evidence can support a finding of bad faith;" *DVComm, LLC v. Hotwire Commc'ns, LLC*, C.A. No. 14-5543 (MAK), 2016 U.S. Dist. LEXIS 13661, 2016 WL 6246824, at *8 (E.D. Pa. Feb. 3, 2016) for the holding  "that the timing of deletion may be 'instructive' when considering culpability," and *Sokn v. Fieldcrest Cmty. Unit Sch. Dist. No. 8*, No. 10-cv-1122 (JBM), 2014 U.S. Dist. LEXIS 6109, 2014 WL 201534, at *7 (C.D. Ill. Jan. 17, 2014) for the holding "that the court may 'infer bad intent based upon when the destruction occurred.'" *In re Gorsoan Ltd.* ), 2020 U.S. Dist. LEXIS 104025, at *26.

Bad faith and culpable state of mind can also be demonstrated by other types of circumstantial evidence, and "circumstantial evidence may be accorded equal weight with direct evidence, and standing alone may be sufficient to support even a determination that requires proof beyond a reasonable doubt." *Cat3, LLC v. Black Lineage, Inc.*, 164 F. Sup. 3d 488, 500 (S.D.N.Y. 2016)(citing *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1184 (2d Cir. 1992), *United States v. Newman*, 773 F.3d 438, 451 (2d Cir. 2014), *cert. denied*, _ U.S. _, 136 S. Ct. 242, 193 L. Ed. 2d 133 (2015); and *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008).

## III.   EVIDENCE IN THE RECORD AT THE TIME OF THE SPOLIATION HEARING

As the Court previously found, the Plaintiff did "not dispute that he deleted the original photo of the noose along with its associated metadata. Neither d[id] he dispute that he has not produced the phone on which he took the original photo. There is thus no question that the evidence has not been preserved. The remaining issue is whether Tyson had an obligation to do so." (Doc. #80, p.4).  The Court held that the Plaintiff was so obligated – "Tyson's texts show that he was making concrete plans to file a discrimination claim at least three months before he discovered the noose in June 2018. And so by the time Tyson deleted the original photo of the noose, he certainly

had an obligation to preserve any evidence that might be relevant to contemplated future legal action." (Doc. #80, p.5).

The Court also found that "[o]n balance, it is plausible to conclude that the original photo and its associated metadata would have been damaging to Tyson's case for the reasons DEEP suggests. Similarly, Tyson's discarding of the phone may have prevented DEEP from recovery of metadata about the photo. Accordingly, as to the second step under Rule 37(e), I conclude that there has been prejudice to DEEP from Tyson's destruction of the original photo and the phone." (Doc. #80, p.5).

With respect to the question of "whether Tyson failed to preserve evidence relating to the noose for the bad faith purpose of depriving his adversaries from using such evidence in this or related litigation," the Court held that DEEP had not "conclusively prove to my satisfaction *at the evidentiary hearing* that Tyson destroyed the evidence in order to secure an advantage for himself in this litigation." (Doc. #80, pp.8-9Emphasis added).   The evidence at the evidentiary hearing demonstrated that "[a]s to the deleted photo, Tyson claimed that he retained only a screenshot because he did not want a picture of a noose in his photo library next to images of his home renovations.  By taking a screenshot of the original, he was able to move the photo out of his general library and into a separate folder. He further explained that the phone on which he took the photo was two versions prior to the one he currently has, that he cannot find the phone, and that he may have thrown it away." (Doc. #80, p.8).

IV.   <u>**EVIDENCE NOW IN THE RECORD**</u>

The evidence that has been admitted during trial has added significant context to the Plaintiff's initial explanation offered at the spoliation hearing.  It is the Defendant's belief that the evidence now in the record conclusively demonstrates that "Tyson failed to preserve evidence

relating to the noose for the bad faith purpose of depriving his adversaries from using such evidence in this or related litigation." (Doc. 80, p.9).  Specifically, the following direct and circumstantial evidence demonstrates that the Plaintiff had an improper motive when he deleted the original photograph and failed to retain the device on which the photograph was taken.

1.   **The Timing Of The Deletion**

   a.   On February 2, 2024, the Plaintiff testified that he deleted the original photograph *several days* after he took the screenshot.

   b.   On February 2 and 5, 2024, the Plaintiff testified that he sent Dawn McKay the *original* photograph.

   c.   Plaintiff sent Dawn McKay the original photograph at 1:51PM on June 25, 2018. According to Plaintiff's testimony, the original photograph was therefore deleted sometime *after* 1:51PM on June 25, 2018. (Defendant's 528, p.2).

   d.   Dawn McKay specifically told the Plaintiff that there needed to be an investigation into his claim at 1:54PM on June 25, 2018. This was *three minutes* after Plaintiff sent McKay the photo. (Defendant's 528, p.2).According to Plaintiff's testimony, he still had the original photo at this time.

   e.   Plaintiff testified on February 5 that he learned no later than the morning of June 27, 2018 that the State Police were investigating, but may have learned earlier than that.

   f.   Dawn McKay sent a text message to Plaintiff notifying in him that the State Police were investigating at 8:57AM on June 27, 2018.  This information was conveyed via text message 44 hours after the Plaintiff first sent the photo to McKay. (Defendant's 528, p.2).

g.  On February 5, Plaintiff testified that he was interviewed by the State Police on June 28, 2018.  This is also verified in the State Police exhibits which show that Plaintiff was interviewed at 10:30AM on that day. (Defendant's 551 and 564).

h.  On February 5, Plaintiff testified that as of his interview with the State Police on June 28, he had already deleted the original photograph.  This is also verified in the State Police exhibits. (Defendant's 551 and 564).

i.  Plaintiff told the State Police on June 28, 2018 that he could not remember when he had deleted the original photograph even though it was no more than three days earlier, but more likely only hours earlier, based on Plaintiff's testimony that he sent McKay the original photo on June 25 and delete it days later. (Defendant's 564).

j.  According to Plaintiff's testimony on February 2 and 5, and the relevant Exhibits, Plaintiff deleted the original photograph immediately before his interview with the State Police because the State Police interview took place less than 72 hours after Plaintiff provided the original photo to McKay and Plaintiff testified that he deleted the original several days after screenshotting it.

**2.  Plaintiff's Under Oath Testimony In The Trial Directly Contradicted His Under Oath Testimony Given During the Spoliation Hearing**

a.  During Plaintiff's testimony on February 2, he testified that Lori Saliby had twice asked him if he had a photograph, and that he had twice responded that he ***did have*** a photograph.  Plaintiff admitted during his testimony that he did not provide the photograph to Saliby on that day.

8

b.  During Plaintiff's testimony on February 5, he changed his testimony and said that Saliby had only asked him if he had a photograph one time, but he again expressly stated that he had answered her that he ***did have*** a photograph.

c.  During the spoliation hearing on October 21, 2022, Plaintiff offered the following testimony:

- "Q. Okay. At that point in time did [Saliby] ever ask you about a photograph?

- A. No, she did not." (Doc. #81, p.17)

d.  Plaintiff was asked the same question again later in the hearing and he offered the same testimony:

- "Q. Did Ms. Saliby, when you first told her that you were going to install cameras, ever specifically ask you whether or not you had a photograph of it?

- A. No. She never asked. I would have said -- she asked about the photo -- I'm sorry, she didn't ask the photo. She asked was it still there. And I said no. If she had asked about a photo, I would have said yes. It would make no sense for me to tell her no only a couple days later to send it to my union rep." (Doc. #81, pp.21-22)

e.  Plaintiff's trial testimony was successfully impeached with his inconsistent under oath statement given in the spoliation hearing. (Defendant's 566).

f.  In contrast to the Plaintiff's shifting testimony, during Lori Saliby's testimony on February 6, she testified unequivocally that she had asked the Plaintiff whether he had a photograph and that he said he ***did not*** have a photograph.  Saliby testified that she was surprised by that answer and asked a second time and Plaintiff said a second time that he ***did not*** have a photograph.

g.  Lori Saliby wrote an email within minutes of Plaintiff's disclosure on June 20, 2018 that he had found a noose in which she stated that Tyson *did not* have a photograph. (Defendant's 537).

h.  Lori Saliby wrote a contemporaneous memorandum in which she recorded all interactions concerning the noose allegation and this memorandum also reflects that Tyson had told her that he *did not* have a photograph of a noose on June 20, 2018. (Defendant's 538)

i.  Plaintiff made no effort to impeach Saliby's testimony or otherwise demonstrate that her account was inaccurate or untrue.  Indeed, Plaintiff testified on February 2 (or possibly February 5) that he considered Lori Saliby a great advocate to this day.

j.  Plaintiff's directly contradictory under oath testimony combined with Saliby's unequivocal testimony supported by contemporaneous documentation demonstrates that Plaintiff's shifting explanation of whether a photo ever existed on June 20 is not reliable or credible.

**3.  Plaintiff Knew Why The Original Photograph Contained Crucial Evidence And Elected Not to Cooperate With the State Police, Did Not Obtain An Independent Forensic Examination, And Did Not Retain The Device**

a.   On July 16, 2018, Dawn McKay told Plaintiff via text message about the State Police request for the phone that "I think it's because you sent it to me on my phone and didn't give it to Lori….I believe they are trying to see when the photo was actually taken since the photo was taken the week prior." (Defendant's 528 p.4)

b.  On July 16, 2018, Plaintiff responded "I guess that would prove I am truthful and that I took the picture the Thursday before I sent it to you on the following week." (Defendant's 528 p.4)

10

c.  On July 16, 2018, McKay responded "I think the police want to be sure if the authenticity of the photo." (Defendant's 528 p.4)

d.  On July 17, 2018, Plaintiff stated to McKay via text message "I have decided to not provide my device to the State Police…party under advisement but mainly because the officer said himself that it would only establish I was telling the truth." (Defendant's 528 p.5)

e.  On February 5, 2024, Plaintiff admitted that all of these statements contained in the text message chain were authentic.  Based on this correspondence, Plaintiff was fully aware that the Police were seeking to establish whether the Plaintiff's report was truthful and that the original photograph was necessary to this inquiry.

f.  On February 5, 2024, Plaintiff testified that he commenced this litigation with a complaint filed with the Connecticut Commission on Human Rights and Opportunities on January 29, 2019.  This is verified by his text message to Dawn McKay also dated January 29, 2019. (Defendant's 528 p.9)

g.  On February 5, 2024, Plaintiff testified that he had replaced his phone on February 27, 2019.  This is verified by his text message to Dawn McKay also dated February 27, 2019. (Defendant's 528 p.10)

h.  Plaintiff's choice not to cooperate with the Police request for his phone may have been justified based on his desire for privacy, but Plaintiff was fully aware that the only corroborating evidence of his claim that he took a photograph of a noose on or before June 20, 2018 was on his device and he discarded it after the litigation *had actually commenced*.

      i.   This resulted in the Defendant not only being deprived of the opportunity to conduct a forensic examination of the device to locate the original photograph but also being deprived of the opportunity to examine the electronic version of the screenshot as well.

## V.    <u>THE DIRECT AND CIRCUMSTANTIAL EVIDENCE IN THE RECORD CONCLUSIVELY DEMONSTRATES A CULPABLE STATE OF MIND</u>

The evidence cited above demonstrates a culpable state of mind by the Plaintiff when he deleted the original photograph and failed to retain the device on which the photograph was taken, and on which the screenshot still resided.  Specifically:

1. The timing of the deletion of the original photograph is highly suspect given that Plaintiff testified that he deleted the original photo several days after he took the screenshot, which means that he deleted the original immediately before Plaintiff's interview with the State Police;

2. Plaintiff's account of whether a photograph was ever taken on or before June 20, 2018 is unreliable given his directly conflicting under oath testimony;

3. The credible evidence in the record demonstrates that Plaintiff did not have a photograph on June 20, 2018 the day that he reported it to Saliby, which means that it was created at some point ***after*** he reported the noose;

4. If Plaintiff created the image sometime after June 20, 2018, while later claiming that the photo was taken on June 20, 2018, this evidence would demonstrate that Plaintiff's claim that he had encountered a noose on that day was also likely false;

5. The only evidence of when, specifically, the original photograph was taken was exclusively within the control of the Plaintiff on his device;

6. Plaintiff chose not to provide the evidence of his truthfulness to the State Police and then *also* failed to keep the evidence of his truthfulness after this litigation commenced, even though he admits that he knew the significance of the information on the device.

Based on the issues outlined above, the direct and circumstantial evidence now in the record is sufficient to demonstrate that the Plaintiff had a culpable state of mind when he deleted the original photograph and failed to retain the device on which it was taken.

Spoliation sanctions serve "a threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation." *Byrnie v. Town of Cromwell Board of Education*, 243 F.3d 93, 107 (2d Cir. 2001)

Plaintiff's destruction of, and failure to retain this evidence has severely prejudiced the Defendant by preventing the Defendant from the opportunity to obtain and review evidence that may refute the Plaintiff's claims for which there are no witnesses or other corroborating evidence. The only way to restore the party harmed by the loss of this evidence is to dismiss the claim that Plaintiff encountered a noose in his workplace.

The Defendant therefore seeks an order dismissing the Plaintiff's claim that he was subjected to a hostile work environment on the basis of having encountered a noose in his workplace. In the alternative the Defendant seeks a *mandatory* adverse inference order be given as part of the jury instructions in this matter. The *permissive* adverse inference that is presently in place was based on the evidence in the record as it existed at the spoliation hearing, but that evidence has now been significantly enhanced and supports a *mandatory* adverse inference.

13

## VI.    <u>CONCLUSION</u>

For all of the foregoing reasons, the Defendant respectfully requests that the Court grant

its renewed motion for spoliation sanctions.

.                                                  DEFENDANT,

                                                   DEPARTMENT OF ENERGY AND
                                                   ENVIRONMENTAL PROTECTION

                                                   WILLIAM TONG
                                                   ATTORNEY GENERAL

                                   By:      */s/Colleen B. Valentine*_____
                                            Colleen B. Valentine (ct28932)
                                            Carolyn Ennis (ct28485)
                                            Sarah Bold (ct30504)
                                            Assistant Attorneys General
                                            Office of the Attorney General
                                            165 Capitol Avenue, Suite 5000
                                            Hartford, CT 06106
                                            Tel.: (860) 808-5340
                                            Fax.: (860) 808-5383
                                            Colleen.Valentine@ct.gov
                                            Carolyn.Ennis@ct.gov
                                            Sarah.Bold@ct.gov

### <u>CERTIFICATION</u>

I hereby certify that on February 8, 2024, a copy of the foregoing Memorandum was filed

electronically.  Notice of this filing was sent by e-mail to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

                                            */s/Colleen B. Valentine*_____
                                            Colleen B. Valentine (#ct28932)
                                            Assistant Attorney General